**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHELSEA WILLIAMS and NICHOLAS J. WILLIAMS, Wife and Husband** 449 Keystone Avenue Peckville, PA 18450 <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **JOHN GILGALLON, POLICE CHIEF; DEAN ARGENTA, Individually and in his Official Capacity; and BOROUGH OF OLYPHANT** 113 Willow Avenue Olyphant, PA 18447 <br><br> **Defendants.** | **Jury Trial Demanded** <br><br> **3: CV 13 2945** Docket: <br><br> **FILED SCRANTON** <br> DEC 0 9 2013 <br> PER _____ DEPUTY CLERK |

## COMPLAINT

***NOW COME*** the Plaintiffs, Chelsea Williams and Nicholas Williams, Wife and Husband, by and through counsel, Harry T. Coleman, Esquire, and hereby complains and alleges a cause of action against the above-referenced Defendants as follows:

### I.  Nature of the Complaint

1.    This is an action seeking to redress acts committed against Plaintiffs in violation of the rights guaranteed to them by the Fourth and

Fourteenth Amendments of the United States Constitution, and are actionable against such Defendants pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983 as well as pursuant to Pennsylvania law. The actions taken against the Plaintiffs resulted in severe physical and emotional injury, monetary damage and distress requiring them to be placed under medical care, and also causing, but not limited to, humiliation, anxiety and other physical ailments and emotional damages. Defendant Argenta's conduct was so egregious and outrageous and intentional, that Plaintiffs seek punitive damages.

## II. Jurisdiction and Venue

2. This is an action for monetary damages for police misconduct brought pursuant to 42 U.S.C. § 1983 and § 1988, the Fourth and Fourteenth Amendments to the United States Constitution and under the common law of the Commonwealth of Pennsylvania. Jurisdiction is based on 28 U.S.C. § 1331 and § 1343 and the supplemental jurisdiction of this Court to entertain claims arising under state law.

3. Venue is proper in the Middle District of Pennsylvania because that is where the complained of activity took place, specifically in the Borough of Olyphant, Lackawanna County, Pennsylvania.

## III.   The Parties

4.     Plaintiff, Chelsea Williams is an adult and competent individual who resides with her husband and children at 449 Keystone Avenue, Peckville, Lackawanna County, Commonwealth of Pennsylvania.

5.     Plaintiff Nicholas Williams is an adult and competent individual who resides with his wife and children at 449 Keystone Avenue, Peckville, Lackawanna County, Commonwealth of Pennsylvania.

6.     Defendant, Dean Argenta (hereinafter referred to as "Defendant Argenta"), is an adult and competent individual who was, at all relevant times, a police officer with the Police Department of the Borough of Olyphant located at 113 Willow Avenue, Olyphant, Lackawanna County, Pennsylvania. Defendant Argenta is sued in his official and individual capacities.

7.     Defendant John Gilgallon (hereinafter referred to as "Defendant Gilgallon"), is an adult and competent individual who maintains the position as Chief of Police for the Borough of Olyphant located at 113 Willow Avenue, Olyphant, Lackawanna County, Pennsylvania. Defendant Gilgallon is sued in his official capacity only.

8.     Defendant Borough of Olyphant (hereinafter referred to as

"Defendant Olyphant Borough") is a municipality located at 113 Willow Avenue, Olyphant, Lackawanna County, Pennsylvania and is a political subdivision of the Commonwealth of Pennsylvania duly organized as a Borough possessing the power to sue and be sued. Olyphant Borough is vested with the management, administration of law enforcement in the Borough of Olyphant by and through its agency, the Olyphant Police Department, in which it is further vested with the supervision and training of police officers so employed.

9. At all material times, Defendant Borough of Olyphant was charged with the responsibility of screening, testing, hiring, training and/or supervising members of the Olyphant Police Department including in particular, Defendant Argenta.

10. At all material times, Defendant Argenta acted within the course and scope of his employment under the color of state law and pursuant to the customs, policies and/or practices of the Borough of Olyphant and the Olyphant Police Department, and is being sued both individually and in his official capacity as an officer, agent and/or employee of Defendant Borough of Olyphant.

## IV.  Factual Allegations

### The Wedding

11.  On June 23, 2012, the Plaintiffs were married and thereafter joined family and friends for a wedding reception at the Montdale Country Club located in Scott Township, Pennsylvania.

12.  The weather was beautiful for the Plaintiff's wedding and the Plaintiffs looked forward to a day that they had long awaited and would start their life together as husband and wife.

13.  The wedding vows were exchanged by the Plaintiff's at 2:00 p.m. on June 23, 2012.  The Plaintiffs had three children together at the time of their marriage.

14.  Through hard work and savings, the Plaintiffs saved money so that they could have the wedding of their dreams and the date selected was June 23, 2012.

15.  Following the wedding, the Plaintiffs were scheduled to relocate to Fort Myers, Florida where they would start their marriage together with their family.

### Designated Drivers To Olyphant After The Wedding

16. Following a beautiful wedding reception, four vehicles were utilized to transport some members of the wedding party and all vehicles were driven by designated drivers.

17. The bride's immediate family members were in the first two vehicles.

18. The vehicles were taking the wedding party to the bride's sister's house in Olyphant where some members of the wedding party were staying.

19. The Plaintiff Chelsea Williams drove back to Olyphant with her husband's Aunt Barbara as well as the Plaintiff's three children.

20. The second vehicle, the one later stopped in downtown Olyphant as discussed below, contained the Plaintiff bride's sisters and companions, as well as the groom, Plaintiff Nicholas Williams.

## The Vehicle Stop By Olyphant Police Department

21. Officer Crowley of the Olyphant Borough Police Department stopped the vehicle in which the Plaintiff Nicholas Williams was a passenger as he suspected that there were too many occupants of the vehicle. The Officer instructed the driver to have the passengers split up in two trips to their ultimate destination.

22.     The vehicle in which the Plaintiff Nicholas Williams had been a passenger in was then dispatched to the Plaintiff Chelsea Williams' sister's home on Susquehanna Avenue in Olyphant, a short distance from the location that Officer Crowley stopped the vehicle. The vehicle discharged all of the passengers and then returned to retrieve Plaintiff Nicholas Williams and the remaining original passengers for ultimate transport to the Susquehanna Avenue destination.

23.     This was an acceptable approach and all former passengers of this vehicle ultimately arrived at the Susquehanna Avenue address of the bride's sister.

### The Family Dispute

24.     A dispute arose that ultimately prompted a neighbor to contact the police as there was a report of people fighting.

### Arrival of Olyphant Police Officer Argenta

25.     Defendant Argenta was the first officer to arrive on scene at the Susquehanna Avenue location.

26.     As the Olyphant police vehicle being driven by Defendant Argenta, in a full Olyphant Police Department uniform, was pulling up to the property, no fight was occurring and all the individuals present had or were

dispersing.

## Defendant Argenta With Plaintiff Nicholas Williams

27.    Defendant Argenta exited the Olyphant Police Department vehicle in full uniform and proceeded in the direction of the Plaintiff Nicholas Williams. Plaintiff Williams was walking toward the vehicle occupied by his Aunt and three minor children in order to leave the location with his new wife and family.

28.    Defendant Argenta approached Nicholas Williams, made no inquiry as to what was occurring, or had occurred.  Importantly at this time, nothing was occurring.

29.    Without warning, provocation or justification, Defendant Argenta proceeded to hit the Plaintiff Nicholas Williams with his police baton in the left leg area.

30.    Plaintiff Nicholas Williams, after being struck by Defendant Argenta, backed away from Argenta and proceeded, for his own safety, to get into the vehicle occupied by his Aunt and three young children.

31.    Defendant Argenta ordered Nicholas Williams out of the vehicle in a profanity laced directive all in ear shot of the Plaintiffs' minor children.

32.    Words were exchanged between the Defendant Argenta and

the Plaintiff Nicholas Williams who was recently subjected to an unwarranted, unprovoked and unjustified beating by the Defendant Argenta. Plaintiff Nicholas Williams started to exit the vehicle when he was dragged by Defendant Argenta and slammed onto the vehicle where the minor children were watching.

33. On information and belief, Defendant Argenta handcuffed the Plaintiff Nicholas Williams.

34. Once Nicholas Williams was handcuffed, Defendant Argenta proceeded to verbally taunt Nicholas Williams.

35. While handcuffed and without need and justification, Plaintiff Nicholas Williams was tasered by Defendant Argenta.

36. Plaintiff Nicholas Williams was then thrown to the ground by the Defendant Argenta.

37. Plaintiff Nicholas Williams, having been beaten by the Defendant Argenta with his baton, improperly handcuffed and tasered as well as thrown to the ground, protested the continued violation of his rights which prompted further tasering by the Defendant Argenta.

38. While handcuffed and laying on the ground, Plaintiff Nicholas Williams was repeatedly hit in the legs and chest by Defendant Argenta

with his baton.

39.    While handcuffed, on the ground, tasered and beaten by Defendant Argenta, Plaintiff Nicholas Williams began to convulse and physically react to the effects of the tasering.   Nicholas Williams was instructed by Defendant Argenta to stop moving.

40.    Plaintiff Nicholas Williams was transported by the Olyphant Police to the Mid Valley Hospital, arriving at 12:10 am on June 24, 2012.

41.    Plaintiff Nicholas Williams had two darts removed from him at the hospital and the hospital records indicate that the Plaintiff Nicholas Williams was "alert, cooperative, and in distress upon arrival."  The Plaintiff Nicholas Williams followed up with continued medical care.

42.    Plaintiff Nicholas Williams was then transported from the Mid Valley Hospital to the processing center at the Lackawanna County Courthouse in   Scranton where he was processed and ultimately transported to the Lackawanna County Jail where he spent the night.

43.    Plaintiff Nicholas Williams was charged with aggravated assault pursuant to 18 P.S. § 2702(a-3), simple assault pursuant to 18 P.S. § 2701(a-1), disorderly conduct pursuant to 18 P.S. § 5503(a-1), public drunkenness pursuant to 18 P.S. § 5505 and resisting arrest pursuant to 18

P.S. § 5104.

44. On August 14, 2012, the Plaintiff Nicholas Williams pled guilty to the charges of disorderly conduct and all remaining charges set forth above were withdrawn.

45. Defendant Argenta was the arresting officer on the criminal charges against Plaintiff Nicholas Williams.

46. The Plaintiff Nicholas Williams had to expend significant funds to retain a criminal defense attorney.

### Defendant Argenta With Plaintiff Chelsea Williams

47. Plaintiff Chelsea Williams was standing near the front seat passenger door of the vehicle occupied by her husband and three small children attempting to prevent further assault to her husband by Defendant Argenta as discussed above.. The Plaintiff Chelsea Williams, on the day of her wedding, was five feet four inches (5' 4") tall and weighed 113 pounds.

48. Defendant Argenta physically threw the Plaintiff Chelsea Williams from the area where she was standing and proceed to drag Nicholas Williams from the vehicle and slammed him into the vehicle in a forceful and violent manner. Plaintiffs Nicholas and Chelsea Williams had violated no law and the Defendant Argenta's conduct here was

11

unconscionable.

49. Having witnessed the beating that her husband had endured including the multiple tasers, Plaintiff Chelsea Williams went toward her husband and knelt down to assist him. As Chelsea Williams knelt down to assist her husband, she was thrown, by her feet and arms, into a nearby bush sustaining injuries as discussed more fully below. Defendant Argenta was responsible for throwing Plaintiff Chelsea Williams and causing injury.

50. A sister of the Plaintiff Chelsea Williams helped the Plaintiff Chelsea Williams from the bushes where she had been thrown by the Defendant Argenta.

51. With her husband still on the ground, convulsing and in distress, Plaintiff Chelsea Williams was restrained by her sister from going to her husband to aid him. At this point, Defendant Argenta approached the Plaintiff Chelsea Williams and physically grabbed the Plaintiff Chelsea Williams from her sister and stated "you want some of this too". Defendant Argenta slammed the Plaintiff Chelsea William against the police vehicle.

52. While being held against the police vehicle, the Defendant Argenta attempted to handcuff the Plaintiff Chelsea Williams and the Plaintiff bride pleaded with Defendant Argenta to allow her to fix her

wedding dress which had fallen fully exposing her breasts. Defendant Argenta denied this request. While crying, Plaintiff Chelsea Williams was tasered by Defendant Argenta and she dropped to the ground.

53.    The Plaintiff Chelsea Williams was then placed into a police cruiser.

54.    Defendant Argenta was requested by another officer on the scene to let the Plaintiff Chelsea Williams go as she did nothing wrong and it was her wedding night and her kids were in the vehicle watching. The Officer stated to Defendant Argenta "this isn't right." This request was met by Defendant Argenta who replied to his fellow officer: "no she's fucking going" and he proceeded to slam the door to the police cruiser.

## Transport To The Olyphant Police Department

55.    Plaintiff Chelsea Williams was then transported to the Olyphant Police Department headquarters where she was ultimately checked by EMTs relative to her taser marks and high blood pressure.

56.    Defendant Argenta ultimately arrived at the Police Station and informed the EMTs that Plaintiff Chelsea Williams was crying because she was drunk. The Plaintiff Chelsea Williams, who had no alcohol that date as she was a non drinker, demanded a breathalyzer which she was given and

passed at 0.00

57.    While in the Olyphant Police Department, the Plaintiff Chelsea Williams was comforted by Officer Crowley of the Olyphant Police Department who provided her with water and told her everything would be fine and that she would be going home shortly.

58.    After this exchange with Officer Crowley, Defendant Argenta came over and handcuffed Chelsea Williams again.    Plaintiff Chelsea Williams protested that the handcuffs were too tight but Argenta refused her plea to loosen them.

59.    Officer Crowley then loosed the Plaintiff Chelsea Williams' handcuffs.

60.    The Plaintiff Chelsea Williams was escorted in a police crusher by Officers Crowley and Argenta to Scranton where she was fingerprinted. During the transport, Defendant Officer Argenta continually taunted Plaintiff Chelsea Williams by chanting the wedding march.

61.    The Plaintiff Chelsea Williams was then placed in a holding cell at the Lackawanna Courthouse where she remained until being released the following morning.

62.    Plaintiff Chelsea Williams was charged by Officer Argenta with

violations of the criminal laws of the Commonwealth of Pennsylvania. Specifically, she was charged with disorderly conduct, resisting arrest, and obstruction of law enforcement activities all pursuant to the Pennsylvania Crimes Code, 18 P.S. 5503(a-4), 5104 and 5101.

63. The Police Criminal Complaint against Chelsea Williams was filed on June 26, 2012 in Magisterial District Court Number 45-1-08 (CR-0000249-212).

64. A Summons issued against Chelsea Williams on June 28, 2012.

65. A Fingerprint Order issued against Chelsea Williams on June 28, 2012.

66. On August 14, 2012, the criminal charges against Chelsea Williams were withdrawn by Arresting Officer Argenta.

67. The Plaintiff Chelsea Williams was required to retain criminal defense counsel relative to the charges set forth above.

68. At the time that Defendant Argenta assaulted the Plaintiff Chelsea Williams, she was pregnant.

69. As the direct result of the assault by Defendant Argenta, the Plaintiff Chelsea Williams was in pain and protested to the Defendant

Argenta.

70.     The day after the Plaintiff Chelsea Williams' encounter with Defendant Argenta as described above, the Plaintiff noted abnormal vaginal bleeding and went with her mother, a registered nurse, to the Mid Valley Hospital in Peckville, Pennsylvania.

71.     The Plaintiff Chelsea Williams was advised by emergency room personnel at the Mid Valley Hospital that the baby that she was carrying had died.  On information and belief, the death of the Plaintiff's child was caused by the trauma the Plaintiff Chelsea Williams endured as a result of the conduct  of the Defendant Argenta in his mistreatment of Chelsea Williams the prior evening.

72.     The use of force on the Plaintiff, Chelsea Williams by Defendant Argenta was arbitrary and capricious and shocks the conscience.

73.     The use of force on the Plaintiff, Chelsea Williams by Defendant Argenta violated her Substantive Due Process right to bodily integrity.

74.     As a direct and proximate result of the aforementioned acts and conduct of the Defendant Argenta, Plaintiff Chelsea Williams lost her baby,

and suffered physical and emotional injury, all of which may be permanent in nature.

75.    As a direct and proximate result of the aforementioned acts and conduct of the Defendant Argenta, Plaintiff Chelsea Williams has been obligated to and may continue to expend various sums of money and to incur various expenditures for medical treatment for an indefinite period of time in the future, to her great detriment and loss.

76.    As a direct and proximate result of the aforementioned acts and conduct of the Defendant Argenta, Plaintiff Chelsea Williams has and will hereinafter incur other financial expenses and losses.

77.    As a direct and proximate result of the aforementioned acts and conduct of the Defendant Argenta, Plaintiff Chelsea Williams has suffered a loss of enjoyment of life, inconvenience, mental anguish and humiliation.

78.    The Plaintiff Chelsea Williams was never convicted for any criminal offense related to the incident but as stated, the charges were withdrawn.

79.    The use of force on the Plaintiff Chelsea Williams by Defendant Argenta constituted a seizure and was unreasonable and excessive in violation of the Plaintiff's rights under the Fourth Amendment.

80.  As a direct and proximate result of the aforementioned acts and conduct of the Defendant Argenta, Plaintiff Chelsea Williams has suffered physical disability and will continue to suffer the same for an indefinite time in the future to her great detriment and loss.

### Defendant Argenta's Law Enforcement Career Termination

81.  The criminal charges filed against the Plaintiffs Nicholas and Chelsea Williams were disposed of on August 14, 2012.

82.  Two days later, on August 16, 2012, the Lackawanna County District Attorney's Office, through its County Detective Bureau, filed criminal charges against Defendant Argenta in the nature of unsworn falsification to authorities.  These charges stemmed from allegations that Defendant Argenta falsified his application for employment with the Olyphant Police Department.

83.  The Chief Law Enforcement Officer for Lackawanna County, the District Attorney, has stated publicly that:  "My No. 1 goal here is that he (Argenta) can't be a cop because of that (lying on his application to the Olyphant Police Department)."

84.  The charges against Defendant Argenta were withdrawn on September 12, 2012.  On information and belief, the charges were

withdrawn pursuant to an agreement that Defendant Argenta would never work in law enforcement again.

85. On information and belief, Defendant Argenta is no longer employed by the Olyphant Police Department but is employed in a non-law enforcement capacity with the Borough of Olyphant.

## COUNT I

### Chelsea Williams v. Defendant Argenta

### 42 U.S.C. § 1983

86. Paragraphs 1 through 85 are incorporated herein by reference as though each were fully set forth herein at length.

87. Plaintiff Chelsea Williams claims damages against the Defendant Argenta for the injuries set forth above under 42 U.S.C. § 1983 for violation of her Constitutional rights to be free from unreasonable and unlawful seizures and free from the use of excessive force under the color of state law. Plaintiff's rights to bodily integrity under the United States Constitution have also been violated.

*WHEREFORE*, Plaintiff Chelsea Williams demands judgment in her favor and against the Defendant Argenta in an amount in excess of

$75,000 plus punitive damages, attorney's fees and costs of suit.

## COUNT II

### Nicholas Williams v. Defendant Argenta

### 42 U.S.C. § 1983

88.    Paragraphs 1 through 87 are incorporated herein by reference as though each were fully set forth herein at length.

89.    Plaintiff Nicholas Williams claims damages against the Defendant Argenta for the injuries set forth above under 42 U.S.C. § 1983 for violation of his Constitutional rights to be free from unreasonable and unlawful seizures and free from the use of excessive force under the color of state law.

*WHEREFORE*, Plaintiff Nicholas Williams demands judgment in his favor and against the Defendant Argenta in an amount in excess of $75,000 plus punitive damages, attorney's fees and costs of suit.

## COUNT III

### Chelsea Williams v. John Gilgallon,
### Chief of Police for the Borough of Olyphant

### 42 U.S.C. § 1983

90.    Plaintiff repeats the allegations of paragraphs 1 through 90 of this Complaint and incorporates same as though fully set forth at length

herein.

91.    At all times material hereto, Plaintiff Chelsea Williams possessed a liberty interest to be free from unreasonable seizure, including but not limited to, the right to be free from extreme, unwarranted and unnecessary use of excessive force.  As a result of the actions taken against Plaintiff by an officer of the Olyphant Police Department, Defendant Argenta, Plaintiff' Chelsea Williams' rights pursuant to the Fourth Amendment of the United States Constitution were violated.

92.    The Defendant here had a duty to screen applicants for employment and he failed in his duty herein.

93.    At all times material hereto, the actions of the Defendant Borough of Olyphant, the Defendant Gilgallon, by and through Defendant Argenta as above-described, constituted a willful disregard and/or reckless indifference to the safety of individuals and violated Plaintiff Chelsea Williams' Constitutional rights by taking a course of conduct that included but was not limited to, the following:

(a)    The utilization of excessive force;

(b)    The excessive/inappropriate use of tasers and/or stun-guns;

(c)     Improper documentation and reporting with regard to the use of excessive force;

(d)      Improper documentation and reporting with regard to the use of tasers and/or stun-guns;

(e)     Using excessive force through malice;

(f)     Failing to have in place appropriate training on the use of excessive force;

(g)     Failing to properly screen applicants for employment within the Olyphant Police Department; and

(h)     Failing to have in place appropriate training on stun-gun use.

94.     As a result of the actions of the Defendant Borough of Olyphant and Defendant Gilgallon, Plaintiff has suffered severe and permanent injuries as set forth.

**WHEREFORE**, Plaintiff Chelsea Williams demands judgment in her favor and against the Defendant Argenta in an amount in excess of $75,000 plus punitive damages, attorney's fees and costs of suit.

## COUNT IV

### Nicholas Williams v. John Gilgallon,
### Chief of Police for the Borough of Olyphant

## 42 U.S.C. § 1983

95.  Plaintiff repeats the allegations of paragraphs 1 through 95 of this Complaint and incorporates same as though fully set forth at length herein.

96.  At all times material hereto, Plaintiff Nicholas Williams possessed a liberty interest to be free from unreasonable seizure, including but not limited to, the right to be free from extreme, unwarranted and unnecessary use of excessive force.  As a result of the actions taken against Plaintiff Nicholas Williams by an officer of the Olyphant Police Department, Defendant Argenta, Plaintiff's rights pursuant to the Fourth Amendment of the United States Constitution were violated.

97.  The Defendant here had a duty to screen applicants for employment and he failed in his duty herein.

98.  At all times material hereto, the actions of the Defendant Borough of Olyphant, the Defendant Gilgallon, by and through Defendant Argenta as above-described, constituted a willful disregard and/or reckless indifference to the safety of individuals and violated Plaintiff Nicholas Williams' Constitutional rights by taking a course of conduct that included but was not limited to, the following:

(i) The utilization of excessive force;

(j) The excessive/inappropriate use of tasers and/or stun-guns;

(k) Improper documentation and reporting with regard to the use of excessive force;

(l) Improper documentation and reporting with regard to the use of tasers and/or stun-guns;

(m) Using excessive force through malice;

(n) Failing to have in place appropriate training on the use of excessive force;

(o) Failing to properly screen applicants for employment within the Olyphant Police Department; and

(p) Failing to have in place appropriate training on stun-gun use.

99. As a result of the actions of the Defendant Borough of Olyphant and Defendant Gilgallon, Plaintiff Nicholas Williams has suffered severe and permanent injuries as set forth.

**WHEREFORE**, Plaintiff Nicholas Williams demands judgment in his favor and against the Defendant Argenta in an amount in excess of

$75,000 plus punitive damages, attorney's fees and costs of suit.

## COUNT V

### Chelsea Williams v. Borough of Olyphant

### *Monell* Claim

100.  Plaintiff repeats the allegations of paragraphs 1 through 100 of this Complaint and incorporates same as though fully set forth at length herein.

101.  Upon information and belief, Defendant Borough and its Police Department do not adequately screen or  train its officers in the use of excessive force.

102.  Upon information and belief, Defendant Borough does not train its police officers at all and instead simply utilizes the Chief of Police of the Police Department without assuring that the Department uses its police powers appropriately and constitutionally and provide adequate training and oversight to its police officers.

*WHEREFORE*, Plaintiff Chelsea Williams demands judgment in her favor and against the Defendant Argenta in an amount in excess of $75,000.

### COUNT VI