## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHELSEA WILLIAMS and** : | |
| **NICHOLAS WILLIAMS,** : | |
| : | |
| **Plaintiffs,** : | |
| **v.** : | **3:13-CV-02945** |
| : | **(JUDGE MARIANI)** |
| **BOROUGH OF OLYPHANT, et al.,** : | |
| : | |
| **Defendants.** : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On December 9, 2013, Plaintiffs Chelsea Williams and Nicholas J. Williams filed a

Complaint against Defendants John Gilgallon, Dean Argenta, and the Borough of Olyphant

("Olyphant Defendants"). (Doc. 1). Plaintiffs filed an Amended Complaint on March 14,

2014 against the Olyphant Defendants, also adding as defendants Officer Katie Fallon,

Officer Mackey, and the Borough of Dickson City. (Doc. 10). Upon consideration of a

Motion to Dismiss the Amended Complaint filed by the Olyphant Defendants (Doc. 17), a

Motion to Dismiss the Amended Complaint filed by Dickson City (Doc. 29), and related

briefs, United States Magistrate Judge Carlson issued a Report and Recommendation of

February 24, 2015 (Doc. 46). The Court adopted the Report and Recommendation by way

of Order dated March 30, 2015 (Doc. 48).

Relevant to this Opinion, the Court dismissed Counts XIII and XIV of Plaintiffs'

Amended Complaint with leave to amend, (see Doc. 48), because they alleged federal

common law abuse of process claims though no such federal common law claim exists,

(see Doc. 46 at 6, n.1). Plaintiffs filed a Second Amended Complaint on April 13, 2015

(Doc. 49). On April 29, 2015, the Olyphant Defendants[1] filed a Motion to Dismiss Count IX,

and only Count IX, of the Second Amended Complaint (Doc. 54). Count IX is stylized as

"Abuse of Process (State)" by "Chelsea Williams v. Defendants." (Doc. 49 at 28).

Defendant's Motion (Doc. 54) has been fully briefed and is ripe for decision. For the

reasons set forth below, the Court will grant the Motion to Dismiss (Doc. 54) with respect to

the Borough of Olyphant and dismiss Count IX with prejudice. The Court will grant the

Motion with respect to Defendant Argenta with leave to amend to allege a claim for

malicious prosecution.

## II. FACTUAL ALLEGATIONS

Because the Court writes primarily for the parties, who are at this point in the

litigation well versed in the factual averments made by Plaintiffs, the Court will only briefly

summarize the relevant allegations.

After Plaintiffs' wedding and reception on June 23, 2012, Plaintiffs and other family

members arrived at the home of Plaintiff Chelsea Williams' sister on Susquehanna Avenue

in Olyphant. (Doc. 49 at ¶¶ 13, 18-25). A family dispute arose at the house, prompting a

neighbor to contact the police. (Id. at ¶ 26). Defendant Argenta, an officer of the Olyphant

Police Department, was the first officer to arrive on scene. (Id. at ¶¶ 27-28). According to

---

[1] By way of previous Order, this Court dismissed Defendant John Gilgallon from the action. (Doc. 48 at 1). As such, the remaining Olyphant Defendants are Dean Argenta and the Borough of Olyphant.

2

the Second Amended Complaint, Defendant Argenta made no inquiry as to what had

occurred, instead approaching Plaintiff Nicholas Williams and hitting him "with his police

baton in the left leg area." (*Id*. at ¶¶ 31-32). Plaintiffs further allege that Defendant Argenta

shouted profanities at Plaintiff Nicholas Williams, dragged him from a vehicle, slammed him

against a car, and handcuffed him. (*Id*. at ¶¶ 34-36). While handcuffed, Plaintiff Nicholas

Williams alleges that he was subjected to further taunting and beating by Defendant

Argenta, and was then tasered by either Defendant Argenta, or by one of the two Dickson

City police officers who had arrived on the scene, Defendants Fallon and Mackey. (*Id*. at ¶¶

29, 37-42).

    While attempting to prevent further assault to her husband, Plaintiff Chelsea Williams

alleges that she was thrown from the area where she was standing by Defendant Argenta.

(Doc. 49 at ¶¶ 50-51). When she then kneeled down to assist her husband, it is alleged that

Defendant Argenta threw her into a nearby bush. (*Id*. at ¶ 52). When she emerged from

the bush, she was restrained by her sister. (*Id*. at ¶¶ 53-54). Defendant Argenta allegedly

approached her, grabbed her from her sister, stating "you want some of this too" and

slamming her against a police car. (*Id*. at 54). The top of Plaintiff Chelsea Williams'

wedding dress had fallen down and Defendant Argenta allegedly refused to allow her to fix

it, ordering her not to move; when she attempted to fix her dress, she alleges that she was

tasered by either Defendant Argenta or Defendants Fallon and Mackey. (*Id*. at ¶ 55). The

Second Amended Complaint further alleges that, when another officer attempted to

3

intervene on behalf of Plaintiff Chelsea Williams to prevent her arrest, noting that she had done nothing wrong and that it was her wedding day, Defendant Argenta stated, "no she's fucking going," and that she was then transported to the Olyphant Police Department headquarters for booking. (*Id*. at ¶¶ 56-58). At the police department, she alleges that she passed a breathalyzer test with a score of 0.00. (Doc. 49 at ¶ 59). During later transport to the City of Scranton, Defendant Argenta is alleged to have further taunted her by chanting the wedding march. (*Id*. at ¶ 63).

According to the Complaint, Plaintiff Chelsea Williams was held at the Lackawanna County Courthouse overnight and was charged by Defendant Argenta with disorderly conduct, resisting arrest, and obstruction of law enforcement activities under the Pennsylvania Crimes Code. (*Id*. at ¶ 64-65). Defendant Argenta later withdrew the criminal charges on August 14, 2012. (*Id*. at ¶ 69). Plaintiff Chelsea Williams was pregnant at the time of her June arrest, and, upon experiencing abnormal bleeding and reporting to an emergency room the day after the arrest, was informed by medical personnel that she had miscarried. (*Id*. at ¶¶ 71-74).

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not show[n] – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that
> amendment would be inequitable or futile, the court must inform the plaintiff
> that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Defendants argue that the Plaintiffs' abuse of process claim in Count IX should be

dismissed as to the remaining two Olyphant Defendants, Dean Argenta and the Borough of

Olyphant. With respect to the Borough, Defendants' argue that the Count should be

dismissed because the Borough is not liable for the alleged intentional tort of Defendant

Argenta under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat.

Ann. § 8541, *et seq.* (Brief in Support of Motion to Dismiss, Doc. 55 at 5-6). Plaintiffs

"concede[] that the Motion to Dismiss of the Borough of Olyphant relative to the abuse of

process claim should be granted." (Brief in Opposition to Motion to Dismiss, Doc. 56 at 12).

The Court agrees that the Borough of Olyphant may not be held liable for Defendant

6

Argenta's alleged intentional tort of abuse of process and will therefore dismiss this count

with prejudice as to the Borough of Olyphant.

The Court will now consider the Olyphant Defendants' challenge to Count IX as it

pertains to Defendant Argenta. "The tort of 'abuse of process' is defined as the use of legal

process against another 'primarily to accomplish a purpose for which it is not designed.'"

*Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting Restatement

(Second) of Torts, § 682).

> The gravamen of the misconduct for which the liability stated [under this tort]
> is imposed *is not* the wrongful procurement of legal process or *the wrongful
> initiation of criminal or civil proceedings*; it is the misuse of process, no matter
> how properly obtained, for any purpose other than that which it was designed
> to accomplish.

*Id.* (quoting Restatement (Second) of Torts, § 682, cmt. a) (emphasis added). To succeed

on an abuse of process claim,

> the plaintiff must show some definite act or threat not authorized by the
> process, or aimed at an objective not legitimate in the use of the process . . . ;
> and there is no liability where the defendant has done nothing more than
> carry out the process to its authorized conclusion, even though with bad
> intentions.

*Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008) (quoting *Shiner v. Moriarty*,

706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)) (internal alterations omitted).

When read as a whole, the portions of the Second Amended Complaint pertaining to

Plaintiff Chelsea Williams focus on the allegations that Defendant Argenta used excessive

force in his interactions with her, that he wrongfully initiated criminal charges against her,

and that these events caused her physical and emotional harm. It is in that context that the

Court reads her abuse of process claim, which, after realleging all previous allegations,

reads in its entirety:

> 114. Defendant Argenta used criminal legal process against the Plaintiff Chelsea Williams resulting in her arrest.

> 115. Defendant Argenta's purpose in using such legal process was primarily to accomplish a purpose for which it was not designed. Specifically, the filing of the criminal charges here were merely a tool to mask the conduct of Argenta on June 23, 2012 and designed to intimidate the Plaintiff Chelsea Williams. There was no conduct by the Plaintiff Chelsea Williams on June 23, 2012 that would evenly remotely approach criminal conduct. The later withdrawal of all charges against Mrs. Williams confirms this fact.

> 116. The use of such legal process proximately caused damage to Plaintiff Chelsea Williams.

(Doc. 49 at ¶¶ 114-16).

Plaintiff Chelsea Williams appears to confuse two separate and distinct actions:

abuse of process and malicious use of process.

> The crux of an abuse of process claim is the "improper use of process after it has been issued, that is, a perversion of it." *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1023 (Pa. 1987) (citations omitted). Under Pennsylvania law, "abuse of process" and "malicious use of process" are similar to, but ultimately distinct from one another.

*Kauffman v. Barbagello*, No. 1:13-cv-00659, 2013 WL 6388487, at *14 (Dec. 5, 2013 M.D.

Pa. 2013). As the Supreme Court of Pennsylvania characterized the two torts:

> The gist of an action for abuse of process is the improper use of process *after it has been issued*, that is, a perversion of it: *Mayer v. Walter*, 64 Pa. 283; Annotation, 80 A.L.R. 581. "An abuse is where the party employs it for some

unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it . . . On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated . . . other than its proper effect and execution": *Mayer v. Walter*, supra, p. 285; *Johnson v. Land Title B. & T. Co.*, 329 Pa. 241, 241, 242, 198 A. 23.

*McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987) (citing *Publix Drug Co. v. Breyer Ice Cream Co.*, 32 A.2d 414, 415 (Pa. 1943)) (emphasis added). The allegations of Plaintiff Chelsea Williams contained in the Second Amended Complaint appear to better fit the tort of malicious criminal prosecution; they do not appear to involve process being perverted in some unlawful way, as required to state a claim for the tort of abuse of process, but simply allege that criminal process was initiated for malicious or unlawful purposes. A malicious prosecution claim under Pennsylvania law requires proof that the defendant "instituted proceedings against the plaintiff (1) without probable cause, (2) with malice, and (3) the proceedings must have terminated in favor of the plaintiff." *Kelley v. Gen. Teamsters, Chauffeurs, and Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). Here, Plaintiffs' believe that Chelsea Williams has stated a claim for abuse of process "*because* Argenta initiated criminal proceedings against [her] without probable cause," (Doc. 56 at 11) (emphasis added), reciting a specific element from a different tort. Along these same lines, Plaintiffs further argue that Argenta did so "solely to mask his constitutionally improper conduct in the use of excessive force against both Nicholas Williams and Chelsea Williams." (*Id.*). Thus, Plaintiff Chelsea Williams' claim is based on the alleged wrongful initiation of

9

criminal proceedings against her by Defendant Argenta, not on the perversion of a legal process already underway.

Plaintiff Chelsea Williams cannot sustain a claim for abuse of process and the Court will dismiss this Count with prejudice. These allegations, while insufficient for the tort of abuse of process, do state a cause of action for malicious criminal prosecution. Plaintiffs will be granted time to amend their Complaint to recast their allegations as a cause of action for malicious prosecution against Defendant Argenta with respect to Chelsea Williams, should the Plaintiffs so wish.

## V. CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss (Doc. 54) with respect to the Borough of Olyphant and dismiss Count IX with prejudice. The Court will grant the Motion with respect to Defendant Argenta and dismiss Count IX with leave to amend to allege a claim for malicious prosecution. A separate Order follows.


Robert D. Mariani
United States District Judge